JOHN J. RITTENHOUSE

*v.*

MARY ANN RITTENHOUSE.

A wife is not guilty of desertion who leaves her home because of the threatening language and conduct of her husband, and thereupon he, instead of asking her to return, notifies the public, by advertisement, not to give her credit.

---

On final hearing on pleadings and proofs.

*Mr. Atwater*, for petitioner.

*Mr. Ransom*, for defendant.

Argued before Barker Gummere, Esq., a special master, sitting for the chancellor.

THE MASTER.

The petitioner asks a divorce from the bonds of matrimony, on the ground that his wife has been guilty of willful,

Rittenhouse *v.* Rittenhouse.

continued and obstinate desertion. The parties were married on the 22d of September, 1867, and lived together until the evening of the 12th of June, 1873, with the exception of some four months in 1872; on that evening the defendant, who had been attending a church fair, returned to her husband's house, but did not enter it; she went to the house of a neighbor to pass the night, and has not since entered her husband's house, nor cohabited with him. The statutory term of three years expired about the 12th of June, 1876, and the petition in the cause was filed June 27th, 1876. The burden is upon the petitioner to demonstrate that the defendant deserted him, and that her desertion was willful, continued and obstinate.

A large amount of testimony has been taken by each of the parties, to prove that the other was the cause of the quarrels that seem to have been nearly continuous between them down to the 12th of June, 1873. The proofs show quite clearly that they were equally in fault and equally quarrelsome. The real question in the cause is, whether the conduct of the parties at and since the evening in question has been such as to entitle the petitioner, and subject the defendant, to a decree of divorce for desertion.

It appears, from the testimony, that the defendant habitually attended the religious meetings of a church in Elizabeth, and encouraged the petitioner's daughters to attend the Sunday-school of the same church, and that the petitioner was strongly prejudiced against that church; that on the afternoon and evening of June 11th, 1873, the defendant attended a fair held at that church, and took the two oldest daughters with her, and that the petitioner was thereby displeased; and that on the next evening, June 12th, the girls asked his permission to again accompany the defendant to the fair, which he refused; and that when the defendant went out alone, the petitioner called after her that she had better be back by half-past nine, as at that hour he should lock up the house and go to bed; and that the defendant attended the fair, and returned to the house,

accompanied by Mrs. Tappen and Mr. La Bar, between
half-past nine and ten o'clock; that the petitioner was on
the front porch, awaiting the coming of the defendant,
and that his demeanor was such that his daughter
Catharine expected "trouble"; and that, on the approach
of the defendant and her companions, he advanced to
the front gate, and, without opening it, stood there,
brandishing a stick or cane, and striking the gate with
it, and at the same time accosting the defendant with
abusive epithets, in so loud a voice as to awaken one of the
witnesses, who was asleep in her house, which is fifty yards
from the gate in question; and that his language and gest-
ures were so violent that the defendant and her companions
concluded it would not be safe for her to enter the house,
and that she then went to the house of a neighbor. The
petitioner alleges that he asked the defendant to come into
the house, and told her he would not hurt her. The defend-
ant denies this, and the weight of evidence and the attend-
ant circumstances are against the statement of the petitioner;
and, even if his statement were true, the defendant reason-
ably distrusted the promise. Her apprehension of violent
treatment at his hands was reasonable, and was justified by
his violent language and gestures, and she acted prudently
in going to her neighbor's house to pass the night. If the
petitioner had, on the next morning, invited her to return
to his house, with the assurance that his excitement had
passed over, and that she need not apprehend violence from
him, she would have been bound to return, and her refusal
to do so would have been obstinate desertion. It was the
duty of the petitioner, after his violent language and con-
duct to her, to have extended to her such an invitation and
assurance. *Cornish* v. *Cornish*, 8 *C. E. Gr.* 208; *Bowlby* v.
*Bowlby*, 10 *C. E. Gr.* 406, 570. Instead of so doing, the peti-
tioner, on the next day, caused an advertisement to be pub-
lished in a newspaper, that the defendant had left his bed
and board of her own free will, and warning the public
against trusting her on his account. He very frankly

Rittenhouse *v.* Rittenhouse.

admits that he did not care whether she returned to his house or not, and that he never invited her to do so. It is proved that, shortly after publishing the notice above mentioned, he prohibited his family from holding any intercourse with the defendant, and the record shows that, promptly upon the expiration of the statutory term, he filed his petition in this cause.

I am of opinion that the conduct of the petitioner conduced to the beginning and the continuance of the alleged desertion of the defendant; that he has not made the efforts he was bound to make to induce the defendant to return to him, but has rather encouraged her to continue her absence; that the defendant has not been guilty of obstinate desertion, and that the petition should be dismissed, with costs.